## ALFRED JESSUP v. J. J. SLONEKER.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF FAYETTE COUNTY.

Argued May 11, 1891—Decided May 25, 1891.

1. The duty of properly guarding a ditch, lawfully opened across a borough sidewalk, is upon the person who procures the excavation to be made and who has direction and control of the work, and not upon the laborer employed to do the work.

2. In an action for negligence in leaving such ditch unguarded, the jury

Statement of Facts.

having found, under proper instructions, that the defendant in opening the ditch was working under the direction of another, and had no charge except as so directed, a judgment for defendant was not error.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 24 July Term 1889, Sup. Ct.; court below, No. 238 September Term 1887, C. P.

On August 2, 1887, Alfred Jessup brought trespass for negligence against Jacob J. Sloneker. Issue.

At the trial on January 23, 1889, the facts made to appear were in substance as follows : In March, 1886, Jacob J. Sloneker owned a lot on Laughlin street in Dawson borough, which he sold to his son John on the sixteenth of that month. There was a building on the lot, used as a store-room, and occupied by one Robert Wright. The cellar under the building was wet and needed draining.

In October, 1886, A. C. McClune owned a house on the other side of the same street and on higher ground. His cellar needed draining, and the property owners, on the same side of the street and below him, refused to allow him to construct a drain through their premises. He then applied to Sloneker, to allow him to construct his drain in front of the lot of the latter. Sloneker consented, on condition that McClune would construct a drain or cause one to be constructed from the store-room cellar, to connect with the drain he proposed to open. The terms being accepted, McClune constructed his drain from his own property across the street and down outside the footwalk in front of Sloneker's lot. When this main drain was ditched, Sloneker, the defendant, with some assistance, opened a drain about two feet wide and five feet deep from the store-room across the sidewalk to the main drain. This ditch was left open and unguarded on the night of October 19th, and that night Alfred Jessup, passing along the sidewalk in company with one Miner, fell into the ditch and was severely injured, resulting in his being under the doctor's care until January, 1887.

The plaintiff testified that he fell into the ditch cut by the defendant across the footway. There was testimony, however, on the part of the defendant, that the plaintiff and his companion were under the influence of liquor, and that the plaint-

iff fell into the main ditch cut by McClune. No question was raised as to the legality of the work of opening the drains in the borough street.

At the close of the testimony, the court, EWING, J., submitted the question whether the plaintiff fell into the main ditch, or into the small one opened by the defendant, and charged the jury, further, in part, as follows :

If, however, you should find that it was into the small ditch the plaintiff fell, then you will proceed to inquire further into the connection of the defendant with that ditch. . . . . Now, the plaintiff alleges that that ditch was being constructed by the defendant, however it may be as to the ownership of the property ; that, admitting that he did not own the property, he was, nevertheless, the party who was constructing the ditch, and they say that his own testimony shows that Mr. McClune, in order to obtain the right of way for his drain upon that side of the street, having been refused it upon the other, went to him and asked him if he could construct his drain down along that side of the street past these premises, as well as going to John Sloneker, also ; and that an agreement was made between them by which Mr. McClune was allowed to construct that drain there, upon his giving permission to connect the drain from Wright's cellar to this main drain, the cost of that to be paid by Mr. McClune. You will understand that the plaintiff's contention is that the testimony of Sloneker shows that, in consideration of Mr. McClune's being allowed to make his drain past the property in question, he was to bear the expense and permit the connection of the drain from Wright's cellar into the main drain, and that the construction of the drain was under the direction and supervision of the defendant, if, at least, a part of the work was not done by him, and that he is responsible for the condition of the ditch at the time the plaintiff fell into it.

[On the part of the defendant, it is alleged that he is not responsible for the work done on the ditch or the condition in which it may have been left. He alleges and his testimony shows that he was simply employed under McClune, doing the work by the direction of McClune, and himself having no charge or volition over it except as directed by McClune in

Charge of Court below.

doing the work; and it is upon that point that we thought the testimony of the defendant admitted of different constructions, and being a question of fact, it is left to you to determine from the testimony, what his connection with that was. If you should find from the testimony that Mr. Sloneker was actually the party constructing this side ditch from the Wright cellar to the main ditch,—in charge of it, having complete control and supervision of it, except as to the result to be attained, even though he was paid by the day or any other way by Mr. McClune for his services or work there, he would be responsible, as claimed by the plaintiff, for any negligence in the conduct of his work, and any consequent injury to the plaintiff. But if you find from the testimony, that he was a mere employee of McClune; employed to do nothing but dig the drain or ditch, to make the excavation or to make the boxes to put into it, and had no supervision or control of the work further than simply to do that part of the work assigned to him, and that the whole control, direction and management of the work was in Mr. McClune and not in the defendant, then we instruct you that the defendant would not be responsible, and your verdict should be for the defendant. You will understand the difference, gentlemen of the jury, that if that work was, except as to the result to be attained, in the control, management and direction of Jacob J. Sloneker, the defendant here, and it was through his negligence the plaintiff was injured, then he would be responsible. If, however, he was only there to do what Mr. McClune told him to do, and that did not embrace any care of this excavation, and there is no evidence going to show that he had any direction from McClune in regard to that, but simply to make the excavation under McClune's direction, and put in the drain under his direction, Sloneker himself not having any control or direction over it, then he would not be responsible.] [2]  [If you should ascertain from the testimony that the defendant had such control and supervision of the work as would make him responsible, then you would proceed to a further inquiry in the case. But if he was acting solely under McClune, then he would not be responsible, and the case would stop there and your verdict would be for the defendant.] [3]

[But if you should find that he is the responsible party for

any negligence there, then you will proceed to a third inquiry, and that is, to ascertain whether or not he took any precautions that were necessary, under the circumstances of the case, to prevent any persons from falling into the drain or excavation that he and others had thus made. Now, I understood the defendant to testify on the stand that he had placed boards and a ladder across the footway there, to guard the excavation. He spoke so low and so indistinctly that I don't know that I gathered all that he said upon any particular point, but I understood, and the jury will remember whether I am correct or not, and how far he went in that direction if he is the responsible party, that he did put boards and a ladder across the footway there; and if he did put boards across the footway there, and a ladder, so as to warn foot passengers that there was danger ahead and keep them from going into this drain, and that was a sufficient protection, then he would not be responsible in this action, even if those things had been removed prior to the time the plaintiff fell in, if they had been removed without his knowledge; and there is no testimony in the case going to show that he had any knowledge that they had been removed, if they had been.] [4]

[It is the duty of a party making an excavation to protect it so as to prevent others from falling into it, particularly upon a sidewalk; for, without something of that kind to warn them to the contrary, the public have a right to think the way is clear as it ought to be. But if he does take these proper precautions, and, by that we mean, use such material as would be proper for the purpose,—if he did that, and they were taken away, and he had no knowledge of the fact that they had been removed a sufficient length of time before the accident occurred to have replaced them, then he would not be responsible.] [5]

[So, gentlemen of the jury, before you proceed to ascertain the amount of damages in this case, if you find for the plaintiff, you should first find four points in favor of the plaintiff: (1) That he fell into the ditch running from the Wright cellar to the main ditch, and not into the main ditch. (2) That the defendant is the responsible party for the condition of that ditch from the Wright cellar to the main ditch, and not a mere servant acting under directions and having no charge of the work or control of any barriers that ought to have been put up

Opinion of the Court.

there for the protection of pedestrians.   (3) That barriers were put up in the first place, and were sufficient and were not removed by the defendant, or by any person with his knowl-edge or consent.   And (4) that the plaintiff did not contribute by any negligence on his part, to the accident.   If any one of these points is found in favor of the defendant, then the ver-dict of the jury must be for the defendant.   But if you find them all in favor of the plaintiff, then you will proceed to ascer-tain the amount of damages he is entitled to recover.] [8] . . . .

—The jury returned a verdict for the defendant.   A rule for a new trial having been discharged and judgment entered, the plaintiff took this appeal, assigning for error:

2–8.  The portions of the charge embraced in [  ] [2 to 8]

*Mr. Edward Campbell* (with him *Mr. T. B. Schnatterly*), for the appellant.

*Mr. R. E. Umbel* (with him *Mr. R. H. Lindsey* and *Mr. S. L. Mestrezat*), for the appellee.

PER CURIAM:

The court below left to the jury the question of the defend-ant's connection with the ditch in question, with the instruc-tion that, if they found he was the party actually constructing and having the control of it, he would be responsible to the plaintiff for any negligence connected with it, by reason of which the plaintiff was injured.   On the other hand, he in-structed the jury that, if the defendant was merely employed under McClune, doing the work under his direction, and him-self having no charge of it except as directed by McClune in doing the work, he would not be liable.   The jury settled this question of fact in favor of the defendant, and we do not find any error in the manner in which it was submitted to them. There was not any negligence in the mere digging of the ditch. For anything that appears, it was a lawful act, and may have been a necessary one.   The negligence, if any, consisted in not having the excavation properly guarded at night.   This duty devolved upon the person who procured the excavation to be made, and who had the direction and control of the work, not upon the laborer employed to do it.

Judgment affirmed.