Samuel L. Beck v. James Hood and Michael Keegan,
Appellant.

*Evidence—Cross-examination—Witness—Party.*

If the cross-examination of a witness is directed to collateral matters,
the court may limit and under some circumstances exclude it; but if di-
rected to the situation of the witness, his relations with the party calling
him, his zeal or bias as shown by his conduct or by improper efforts to
influence witnesses or jurors in the case trying, it is, within proper limits,
a matter of right; and when a party becomes a witness for himself, he
stands in no better position than any other witness.

On the trial of a negligence case, the plaintiff may be asked upon cross-
examination whether he did not, during the progress of a previous trial of
the case, meet the foreman of the jury, treat him to liquor, talk with him
about the case, and attempt to influence his judgment.

*Negligence—Joint negligence—Owner and contractor—Province of court
and jury.*

In an action to recover damages for personal injuries suffered by reason
of a pile of stones on a sidewalk, where it appears that the stones were
placed on the sidewalk by a contractor, and both the contractor and the
owner are defendants, it is error for the court to charge that, as to the con-
tractor, "he put the stone there, and had control of it while it was there;
and if there be any liability for negligence it is obvious that in the act of
negligence he was a participant." Either or both may have been guilty of
negligence, if negligence existed. The question is one of fact for the
determination of the jury and not of law for the decision of the court.
While the general rule is that the true ground of liability in actions for
negligence is not danger but negligence, and the test of negligence is the
ordinary usage of business, yet this rule is not applicable where the ordi-
nary usage of business is below what ordinary care requires.

*Negligence—Dangerous sidewalk—Reasonable care—Question for jury.*

It is not enough for a builder to fence off a part of a dangerous sidewalk and put up lights in the evening, and then give it no more attention. He may not be required to maintain a watchman at the gate, but he must give some attention to it afterward, while the walks are actively occupied, in order to be sure that the lights and barriers he has provided to protect the public are in place, and are doing their work. The question whether he has exercised proper care is for the jury.

Argued March 24, 1897. Re-argued January 4, 1898. Appeal, No. 15, Jan. T., 1897, by Michael Keegan, one of the defendants, from judgment of C. P. No. 3, Phila. Co., on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for personal injuries. Before GORDON, J.

The facts appear by the opinion of the Supreme Court.

At the trial, Mr. Beck, of counsel for defendants, made the following offer:

I offer to prove by this witness, the plaintiff, and for the purpose of attacking his credibility, and with a full understanding that I am bound by his answer, that on a previous trial of this case, and during its progress, he, the plaintiff, met the then foreman of the jury, which jury was then trying the case, out of court, took him to a tavern on Sixth street above Chestnut, bought him liquor, and then induced him to go to his, plaintiff's, home and place of business, No. 313 Marshall street, and there talked to said juror in regard to the probability of the verdict to be rendered by the said juror and his fellows, and attempted to demonstrate to said juror his, plaintiff's, physical inability to perform his work as a printer.

Offer objected to. Objection sustained by the court. Exception for defendant. [1]

The court charged in part as follows:

[By Mr. Hood's own testimony, he took the duty of guarding or poling off the street and giving warning as to the condition of this pavement. As to Mr. Keegan, he put the stone there and had control of it while it was there; and if there be any liability for negligence, it is obvious that in the act of negligence he was a participant. I say that, not because I think there is any negligence in the case, but simply to state to you,

if you should reach that point in the case, that that is my conception of the law.] [4]

Defendants' points and the answers thereto among others were as follows :

3. If the jury believe that the pavement upon which the accident happened had been poled off prior to the accident, and that the pole was, on the night of the accident, and prior thereto, taken down without the knowledge of the defendants, and by parties over whom they had no control, the defendants are not liable. *Answer :* I refuse to so charge you. [5]

5. That the pavement in the condition in which it was on the night in question was dangerous for traveling does not necessarily create liability on the part of the defendants. The ground of liability is not danger, but negligence, and the test of negligence is the ordinary usage of the business. *Answer :* I refuse that in the form in which it is stated. The test of danger is the ordinary usage of the business, if the ordinary use of the business was the exercise of ordinary care under the circumstances. [6]

6. If it is the custom of the building trade when a general contractor divides the various divisions of his work among subcontractors, for such subcontractors to look to the general contractor to take reasonable precautions to pole off the street and place signals, then the defendant Keegan is not liable. *Answer :* I refuse that point. [7]

8. It appearing from the evidence that the street in question was lighted at either end by an electric light, and that a gas lamp was in the middle, and that the obstruction over which the plaintiff fell was four feet long and about sixteen inches wide, and it further appearing from the plaintiff's testimony that he saw immediately after the accident that a building operation was in progress on that side of the street, that the steps of the house upon the pavement of which the accident happened were not set, you will assume that, had the plaintiff looked where he was walking, he could have seen the object in question and avoided it, and your verdict must therefore be for the defendants. *Answer :* Refused. [8]

9. Under the evidence your verdict should be for the defendants. *Answer :* Refused. [9]

10. Under the evidence your verdict should be for the defendant, Michael Keegan. *Answer :* Refused. [10]

Verdict and judgment for plaintiff for $2,000. Defendant, Michael Keegan, appealed.

*Errors assigned* among others were (1) rulings on evidence, quoting the bill of exceptions; (4–10) above instructions, quoting them.

*James M. Beck,* with him *William F. Harrity,* for appellant. —Everything is material that affects the credit of the witness, and every question on cross-examination that goes to the credit of the witness is material: Reg. v. Overton, 2 Moody C. C. 263; Kelsey v. Ins. Co., 35 Conn. 225; People v. Morrigan, 29 Mich. 5; McFarlin v. State, 41 Texas, 23; People v. Christie, 2 Parker, C. R. 579; State v. Dee, 14 Minn. 35; Oldershaw v. Knowles, 101 Ill. 117; Cundell v. Pratt, 1 M. & M. 108; Real v. People, 42 N. Y. 270; Ordway v. Haynes, 50 N. H. 159; Hunter v. Wetsell, 84 N. Y. 549; Boles v. State, 46 Ala. 204; Keyser v. R. R., 56 Iowa, 440; State v. Willingham, 33 La. Ann. 537; King v. Atkins, 33 La. Ann. 1057; Field v. Davis, 27 Kan. 400; Cameron v. Montgomery, 13 S. & R. 131; Batdorff v. Farmers' Bank, 61 Pa. 179; Com. v. Mosier, 135 Pa. 221; Fitzpatrick v. Riley, 163 Pa. 65.

The ground of liability is, not danger, but negligence; and the test of negligence is the ordinary usage of the business: Ford v. Anderson, 139 Pa. 263; Titus v. R. R., 136 Pa. 618; Ship Building Works v. Nuttall, 119 Pa. 149; Payne v. Reese, 100 Pa. 306; Sykes v. Packer, 99 Pa. 465; Lehigh Coal Co. v. Hayes, 128 Pa. 294.

*Thomas A. Fahy* and *Howard B. Lewis,* for appellee.—The court below rightly excluded the offer, because it was irrelevant to the question of negligence involved in the case: Buck v. Com., 107 Pa. 486; Huoncker v. Merkey, 102 Pa. 467; Clark v. Trinity Church, 5 W. & S. 266; Rea v. Missouri, 17 Wall. 532.

Evidence of custom and usage, in cases like the present one, where the action is by third persons, has been excluded in sister states: Magee v. Troy, 48 Hun, 383; Wright v. Boller, 42 Hun, 77; Earl v. Crouch, 16 N. Y. Supp. 770; Bailey v. New Haven, etc., R. R., 107 Mass. 496.

OPINION BY MR. JUSTICE WILLIAMS, March 21, 1898 :

This is an action of trespass brought to recover damages for a personal injury suffered by the plaintiff, which he alleges resulted from the negligence of the defendants. His right to recover depends upon his ability to show the negligence of which he complains, and that it was the proximate cause of his injury. The circumstances surrounding the accident, as disclosed by the testimony, were substantially these. The plaintiff had been during the early evening of the 31st of August, 1890, at the house of an acquaintance near the corner of Sixth street and Montgomery avenue in the city of Philadelphia. He started to return home at about 9:30 o'clock. His route was down Sixth street in a southerly direction, one square to Columbia avenue, west on Columbia avenue one square to Seventh street and southerly again, down Seventh street to some point below Oxford street. He turned down Seventh street on the east side, and for about one hundred feet the houses were all occupied and the footwalks in front of them were in good condition. At the end of this distance a narrow alley crossed the walk, and from this alley down to Oxford street a row of twenty-two new houses was in process of construction. The sidewalk in front of this row was in an unfinished condition. It had been graded ready for the surface of brick or asphaltum, but no part of it was completed, and at least one half of its breadth was incumbered with building materials. Near the middle of the outer half of the graded footwalk, or two or three feet from the curb, in front of the second house from the alley, a block of stone was lying. Beck, on reaching the alley, crossed it and entered upon the unfinished walk in front of the row of new houses, walking rapidly. He ran against the block of stone and injured one of his legs quite seriously, and for this injury he now seeks to recover in this case. Hood was owner of these new houses, and was building them by contracting with mechanics and material men for different portions of the work. Keegan was one of these contractors, and his undertaking was to furnish the stones used about the steps and foundations, and put them in place. The block against which Beck ran was intended for use in the front steps of the second house from the alley, in front of which it lay, and had been delivered by Keegan's employees before the close of the day of the 31st of August. The contention of

the plaintiff was that it was the duty of Hood, as owner and builder, to protect the public from the danger of injury on account of the unfinished and incumbered condition of the sidewalk, by barricading or fencing it off at both ends, and by the display of lights, so as fully to warn the public of the situation. He also contended that it was the duty of Keegan when the block of stone was delivered to him upon the unfinished walk, to remove it to some less exposed position or, if for any reason this was not practicable, to protect passers, by the use of lights or by the erection of barriers about it. The defendants set up the exercise of due care on their part by the display of red lanterns near the curb and just below the alley, and the erection of barriers at each end of the building operation.

They also alleged that the street was well lighted, that the fact that a building operation was in progress was perfectly obvious to every traveler on the street, and that the stone with which Beck collided was plainly visible and should have been avoided by one exercising common care. On the trial the plaintiff took the witness stand in his own behalf and testified at length in regard to all the contested questions of fact involved. He denied the existence of barriers across the walk, of red lights at the proper places, and of the sufficiency of the street lights to enable him to see that a building operation was in progress or that the walk was incumbered with materials. He alleged on the other hand that the walk was hard and smooth, and that there was nothing in its condition to warn him that it was unfinished, or to put him upon notice.

While his cross-examination was in progress counsel for defendants proposed to show by him, " for the purpose of attacking his credibility, and with a full understanding that I am bound by his answer, that on a previous trial of this cause, and during its progress he, the plaintiff, met the foreman of the jury, which was then trying the case, out of court, took him to a tavern on Sixth street, bought him liquor and then induced him to go to his, plaintiff's, house and place of business at No. 313 Marshall street, and there talked to said juror in regard to the probability of the verdict to be rendered by the said juror and his fellows, and attempted to demonstrate to said juror his, plaintiff's, physical inability to perform his work as a printer." This offer was objected to as inadmissible for the purpose proposed;

the objection was sustained and the offer excluded by the court. This ruling is the subject of the first assignment of error. The rule limiting the right to cross-examine with a view to affect the credibility of the witness is stated in the case of Elliott v. Boyles, 31 Pa. 65. If the examination is directed to collateral matters the court may limit, and under some circumstances exclude it; but if directed to the situation of the witness, his relations with the party calling him, his zeal or bias as shown by his conduct, or by improper efforts to influence witnesses or jurors in the case trying, it is, within proper limits, a matter of right: Cameron v. Montgomery, 13 S. & R. 128. When the party becomes a witness for himself he stands in no better position than any other witness not a party. His credibility may be attacked by the same methods, and his conduct when he attempts to corrupt the administration of justice is subject to investigation in the same manner. The facts set out in the rejected offer were such as if proved before the jury would have been an impeachment of the character of the plaintiff, and a moral conviction of a misdemeanor. They were not only sufficient to affect his credibility, but their force could not have been readily avoided.

It is not necessary to go at length into a discussion of the modern doctrine in regard to cross-examination, or the introduction of evidence for the purpose of discrediting a witness, for the cross-examination proposed is not on debatable ground. It was clearly admissible. Counsel for appellee seems to rely upon Buck v. The Commonwealth, 107 Pa. 486, as holding an opposite doctrine, but it is really in harmony with the rule we have stated. In that case it was sought to show that the witness had been indicted and convicted of an offense at some previous time, in order to affect his credibility, and it was said that the record of the conviction was the proper evidence of the fact. There was no such question here. The offer was to show that the witness, who was also the party, had on a former trial of this case sought to reach the jury that had been sworn for its trial by ex parte statements and by other methods equally reprehensible, which were intended to affect their verdict. There was no record by which the facts stated in the offer could be shown. If they were admissible, about which we have no doubt, the offer to show them by a cross-examination of the

witness against whom they were alleged was a proper method of proof. The first assignment is sustained. The fourth assignment of error is to an instruction in the general charge in relation to the liability of Keegan. The learned judge said to the jury: "As to Mr. Keegan, he put the stone there and had control of it while it was there; and if there be any liability for negligence it is obvious that in the act of negligence he was a participant." This was in effect a binding direction that if Hood was guilty of negligence then Keegan was as a "participant" in the act of negligence also guilty. This does not necessarily follow. The negligence, if any was found to exist, may have been chargeable to Hood, or to Keegan, or both might have been found equally careless of the safety of the public. The question was one of fact for the determination of the jury, not of law for the decision of the court. The negligence of Keegan, like that of Hood, depended upon his own acts or omissions, and not on those of another. Each had a duty to perform and each must stand or fall upon the manner of his performance. If Keegan put or caused the stone to be put upon the sidewalk he had no right to rely upon a temporary barrier erected by Hood, without giving attention to its maintenance or otherwise warning or protecting the public. It may be that under all the circumstances of this case the direction now considered did the defendant no harm, but as the case must be reversed upon the first assignment, the true rule on this subject should be pointed out.

The sixth assignment is directed at the answer by the learned judge to the defendants' fifth point. The instruction asked was that the true ground of liability in actions for negligence was "not danger but negligence, and the test of negligence is the ordinary usage of business." This is undoubtedly the general rule, Ford v. Anderson, 139 Pa. 263, and should have been affirmed by the court, and the possible exceptions pointed out. The answer was "I refuse that point in the form in which it is stated; the test of danger is the ordinary usage of business if the ordinary usage of the business was the exercise of ordinary care under the circumstances." This was really an affirmance by the learned judge of the rule stated in the point in the very words of the point, with a qualification denying its effect in cases where an ordinary usage of business was below what ordi-

nary care would require.  This was right in effect, although
the formal refusal of the point might possibly mislead the jury
to some extent as to the general effect of the answer.  One
other subject brought to our attention by the fifth assignment
of error requires notice.  The defendants' third point asked the
court to instruct the jury that if the sidewalk had been poled
or fenced off by the defendants on that evening before the hap-
pening of the accident, and the pole had been taken down with-
out the defendants' knowledge, by parties over whom they had
no control, they were not liable for the accident.  This instruc-
tion was properly refused. . It would not be enough for a builder
to fence off a part of the walk, because it was in a dangerous
condition, and then give it no more attention.  He knows the
probabilities of the removal of the barrier by mischievous or
disorderly persons, and he should exercise reasonable care to
see that it is in place.  It might not be necessary to maintain
a watchman at the spot during the night, but the builder should
give some attention to this subject during the evening, and
while the walks are actively occupied, in order to be sure that
the lights and barriers he has provided to protect the public
are in place and are doing their work.  How well this had been
done in this case was for the jury.  The pole was certainly
down, according to the plaintiff's testimony, when he came
upon this part of the walk, although it had been found in place
but a few moments before.  There was an electric street light
at Columbia avenue a little more than one hundred feet away.
There was another at Oxford street or near the other end of
the row of houses, and there was a gas burner about midway
between them upon the other side of the street.  There were
red lights also displayed within a few feet of the block of stone
at the curb.  Whether there was light sufficient to enable one
exercising ordinary care to see where he was going, or warn-
ings sufficient in the red lights at the curb to attract his atten-
tion, are questions that, upon a new trial, should be distinctly
brought to the attention of the jury.

For the reasons given in this opinion the judgment is re-
versed, and a writ of venire facias de novo awarded.