Braden et al., Appellants, *v.* Pittsburgh.

428

Argued May 8, 1940.

Before CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

T. *Robert Brennan,* for appellant.

*Anne X. Alpern,* First Assistant City Solicitor, with her *Wm. Alvah Stewart,* City Solicitor, for appellee.

OPINION BY HIRT, J., January 30, 1941:

Near plaintiffs' home, the City of Pittsburgh had maintained a wooden stairway for pedestrians connecting the upper section of Irwin Avenue where the cartway ended at the top of a hill, with a continuation of the street from the lower level at the foot of the slope. The stairway had fallen into decay and during January 1935 was in the course of reconstruction by the city with the aid of Federal labor. The repair or renewal of the upper 2/3 of the stairway had been completed and the lower 45 feet had been removed to make way for the new structure when the appropriation for the project became exhausted and the work stopped. The workmen for their convenience had dug steps into the earth in the surface of the hillside from the lower end of the completed section of the wooden stairway to the foot of the hill. When the work was suspended, the city placed a wooden barricade across the entrance to the stairway at the top, bearing the warning "travel at your own risk." This barrier had been in place undisturbed for a period of about three weeks after the close of the work and until 4:30 of the afternoon of February 7, 1935, when, according to the testimony it

was observed to have been removed. At 8:30 the following morning the minor plaintiff, seeing that the barricade was down, used the stairway as a short cut to her school. She had no great difficulty until she left the bottom of the completed structure and reached the earth steps cut into the hillside. These steps were uneven and irregular; they were covered with snow and underneath were "all ridged and rutted with ice." In stepping into a hole in one of them she was thrown forward and was precipitated to the bottom of the hill and was injured. This appeal followed the entry of judgments for the city, notwithstanding verdicts for the plaintiffs. Negligence of the city and contributory negligence of the minor plaintiff are the issues involved.

Since we agree with the lower court that the plaintiffs have not met the burden upon them of proving that the city was negligent, we may pass the question of the contributory negligence of the minor with this comment: The presumption that a child is incapable of negligence grows constantly weaker with increased age and upon approaching age fourteen reaches "that point in the diminishing scale when it was [is] almost a negligible quantity": *Gress v. Phila. & Reading Ry. Co.,* 228 Pa. 482, 77 A. 810. The minor plaintiff in this case was thirteen years four months old. Even where a minor is under fourteen, on an uncontradicted showing of unusual capacity in clear cases, where there can be no reasonable doubt to be drawn from the facts, the court may declare the presumption rebutted as a matter of law. *Parker v. St. Railway Co.,* 207 Pa. 438, 56 A. 1001. In the following cases recovery was denied: *Nagle v. Allegheny Valley Railroad Co.,* 88 Pa. 35; *Moore v. Pennsylvania R. R. Co.,* 99 Pa. 301; *Shannon v. Philadelphia,* 185 Pa. 347, 39 A. 1117; *Gress v. Phila. & Reading Ry. Co.,* supra. See exhaustive note in 107 A.L.R. 164-178. This minor's testimony indicates that she was well above the average in intelligence; she

had stood third in her class on graduation from Junior High School. She was a normal child and had participated in winter sports to some extent. In common with all children in the latitude of Pittsburgh she was familiar with the qualities of snow and ice. The snow covered steps cut into the hillside were in full view from the foot of the wooden stairway and a test of the obvious danger of descending them undoubtedly would have barred an adult from recovery under like circumstances. Whether this plaintiff is chargeable with negligence as a matter of law is a debatable question at best. *Gress v. Phila. & Reading Ry. Co.,* supra.

As to the defendant's negligence: Since the building of this stairway was the city's project and was directly under its supervision and control no notice was necessary to impose the duty upon the city of properly guarding the stairway during the course of construction. *Rowland v. Philadelphia,* 202 Pa. 50, 51 A. 589; 50 A.L.R. 1193. And when the work was suspended and the workmen had left, though the city was not obliged to station a watchman on the incompleted structure yet the same duty devolved upon it as upon a private owner or contractor under like circumstances, of placing proper guards or barricades across the entrance to the stairway, closing the structure to public use. *Thubron v. Dravo C. Co.,* 238 Pa. 443, 86 A. 292. Maintaining a barrier of proper construction will relieve a city from liability for the injury of one ignoring the warning (*Jessup v. Sloneker,* 142 Pa. 527, 21 A. 988) and it is conceded, as it must be, that the barricade erected by the city in this case with the warning "travel at your own risk" was sufficient for the purpose during the time it was in place. The testimony is that this barrier was removed by someone without the actual knowledge or consent of the city. The general rule is that when a dangerous condition has been created and precautions have been taken adequately to safeguard

the public from the dangers arising therefrom, no liability will be incurred for an injury resulting from the removal of such safeguard by a third person. 62 A.L.R. 500; 200 L.R.A. (N.S.) 723. The circumstances of the removal of the barrier in this case do not appear and there is no evidence of the time of its removal before 4:30 in the afternoon of February 7, 1935.

Since the unauthorized removal of a barrier in itself imposes no liability, if the city is chargeable with negligence in this case, it must be because of its failure to replace the safeguard within a reasonable time after constructive notice of the fact that the barrier had been taken away. The controlling question resolves itself into the inquiry whether the city had constructive notice that the stairway was unguarded. On this question the authorities having to do with rights and liabilities where the dangerous condition is in a highway caused by wear and tear or by alternate thawing and freezing, do not apply; in that class of cases a somewhat longer period of time is required to charge a municipality with notice of the danger. As to a sidewalk in the course of repair, a much shorter period will charge the owner of land and a private contractor with constructive notice of the removal of safeguards during the progress of the work (*Beck v. Hood,* 185 Pa. 32, 39 A. 842) than is required to impose liability upon a large municipality. *Mills v. Philadelphia,* 187 Pa. 287, 40 A. 821; *McLaughlin v. Kelly,* 230 Pa. 251, 79 A. 552. Manifestly no definite interval of time, applicable to all cases, can be said to be sufficient to charge a municipality with notice of a dangerous condition in a project undertaken by the city and directly under its control and therefore the question because of varying circumstances is usually for the jury, though in a clear case it may be one of law.

We are of the opinion that this is a clear case and that on the undisputed facts the interval was too short

to charge the city with constructive notice. True, the barrier was down for 16 hours but of that period *between 4:30 P. M. on February 7, 1935 and 8:30 the following morning, the time of the accident, there was something less than a total of three hours of daylight.* The law charges a city with notice of a defect only if it has existed a sufficient length of time to be observed by its officers exercising reasonable supervision. *McLaughlin v. Kelly,* supra. After placing a safeguard sufficient for the purpose the city's duty was one of inspection, to see that it was in place, but the city was bound to inspect only at reasonably frequent intervals. The city's failure to anticipate that the safeguard might be removed was not negligence in itself, in the absence of circumstances indicating the probability that it would be removed. 62 A.L.R. 504; *Doherty v. Inhabitants of Waltham,* 4 Gray 596; *Canfield v. City of Newport,* 73 S. W. 788 (Ky.).

The probable danger and the element of risk to a pedestrian involved in descending the hill have some bearing upon the degree of care required of the city and the frequency of inspection required to see to it that the barrier was in place. The hill for the lower 45 feet, into which the earth steps were cut, was only moderately steep; in that distance the perpendicular drop was less than 10 feet. There were thirteen steps with risers of no more than 9 inches. The treads of these improvised steps were at least 3 feet long and were usable by pedestrians without danger of injury except when wet or slippery from an accumulation of ice and snow. The stairway was not attractive to children except as used by the minor plaintiff as a short cut to school. The danger therefore was not immediate as in the case of the failure to safeguard an open ditch in a sidewalk. The case, also, is not comparable in the degree of care required, with one involving a repair of a known dangerous defect in the cartway of a

highway open to traffic. Here, the stairway had been closed for several weeks with a barrier marked "travel at your own risk." It was entirely outside of the traveled portion of any highway. From the inferences from the testimony most favorable to plaintiffs we are unable to say that sixteen hours with fewer than three hours of daylight was sufficient under the circumstances to charge the city with constructive notice of the danger. If this conclusion is valid, as we believe it to be, there is legal excuse for the city's failure to replace the barrier in the interval.

Judgments affirmed.

DISSENTING OPINION BY STADTFELD, J., March 12, 1941:

It is my opinion that the judgment of the court below should be reversed. To affirm this judgment is to take the position that under the circumstances of this case, all facts and inferences of facts reasonably deducible therefrom being considered most favorably for plaintiffs, the minor plaintiff is to be adjudged guilty of contributory negligence as a matter of law, or the city is to be adjudged free from negligence as a matter of law. The majority of this court are "unable to say that sixteen hours with fewer than three hours of daylight was sufficient under the circumstances *to charge* the city with constructive notice of the danger." The evidence does not support holding as a matter of law that the city had no constructive notice of the danger. The real issue before this court, it seems to me, is whether the evidence adduced by plaintiffs was sufficient to entitle the question of defendant's negligence to go to the jury. This is not such a "clear case" as would justify its withdrawal from the jury.

The work of reconstructing the stairway was under the supervision and control of the city. The undisputed facts establish the dangerous condition of the lower portion of the stairway, comprised of a series of descending excavations. No third party was involved here

either in making the improvement or in leaving the premises in the condition they were at the time of the accident. The city alone was directly engaged in the work. Hence, the responsibility for exercising due care with reference to the traveling public, rested directly upon the city alone. This responsibility was recognized when the city erected barricades carrying the warning "Travel at Your Own Risk." Nothing further appears to have been done to close the stairway entirely to public travel.

Moreover, this duty of due care could not be absolutely discharged merely by setting up barricades and, thereafter, giving no more attention to the stairway or the approaches thereto. The duty was a continuing one. Some reasonable precaution against the removal of the barricades was necessary, or such adequate attention as would result in the replacement of the barricades if removed. It appears from the undisputed facts that the barricades erected by the city, were not in place for a period of nearly sixteen hours, from 4:30 P.M. on February 7, to 8:00 A.M., February 8, when the accident occurred. Conceding that of the sixteen hour period during which the barrier was down "there was something less than a total of three hours of daylight," it should be noted that there was some period of daylight immediately preceding thirteen hours of darkness. It does not appear that the city made any inspection at the close of day just preceding the long night ahead; nor does it appear that any inspection was made the following morning after the lapse of more than thirteen hours and prior to the accident.

The case of *Beck v. Hood*, 185 Pa. 32, 39 A. 842, involved an action to recover damages for personal injuries suffered by reason of a pile of stones on a sidewalk. The block of stone had been delivered by the employees of the defendants' contractor before "the close of day" of the 31st of August. The plaintiff, walking along the sidewalk, about 9:30 P.M., ran against the

block of stone and injured his leg. The defendants asked the court to instruct the jury that if the sidewalk had been poled or fenced off by defendants on the evening before the happening of the accident, and the pole had been taken down without the defendants' knowledge by parties over whom they had no control, they were not liable for the accident. The Supreme Court held this instruction was properly refused, saying at p. 40: "It would not be enough for a builder to fence off a part of the walk, because it was in a dangerous condition, and then give it no more attention. He knows the probabilities of the removal of the barrier by mischievous or disorderly persons, and he should exercise reasonable care to see that it is in place. It might not be necessary to maintain a watchman at the spot during the night, but the builder should give some attention to this subject during the evening, and while the walks are actively occupied, in order to be sure that the lights and barriers he has provided to protect the public are in place and doing their work. How well this had been done in this case was for the jury. The pole was certainly down, according to the plaintiff's testimony, when he came upon this part of the walk, although it had been found in place but a few moments before."

As to the question of the minor plaintiff's contributory negligence: the testimony indicates that the minor plaintiff had no knowledge of the defective condition of the stairway prior to her entrance upon it. It was only after she became committed to the use of the stairway and actually entered upon the descent that she became aware of the fact that it had not yet been completed. When she had reached the bottom of the completed stairway, she first observed the absence of wooden steps for the remaining 45 feet of the descent. She testified that she did not realize at first that these excavations, coated with ice, were in a dangerous condition since the first one was not so bad. The second dirt step, she testified, was about the same, the third a little

bad, the fourth about the same, the fifth rather bad. At this point she stated that she did not turn back because she was afraid of falling on the way back, and that she might be late for school. However, she decided to continue down the remaining dirt steps, covered with rough ice and having a surface of light snow. It was on the sixth or seventh step that she fell.

The minor plaintiff, in making her way down the stairway, managed to descend the wooden stairway in safety. It was only after she had reached the fifth or sixth step-like excavation, about two-thirds of the way down the entire descent, that the danger of the situation confronted her. At this point, travel in either direction was dangerous. The possibility of avoiding an apparent risk by a prudent selection of an alternative course, was no longer a matter depending on the exercise of due care. She made her choice and continued down the dirt excavations.

There is no question that the duty imposed upon an adult, is one that requires the use of such care as is usual under similar circumstances by a prudent person, that is, to look where he is going and to exercise reasonable diligence to avoid a dangerous hazard: *Brinkos et ux. v. McKeesport City*, 136 Pa.. Superior Ct. 526, 7 A. 2d 516. In that case, a verdict was returned in favor of the wife plaintiff in an action against the city for injuries sustained by her when she fell upon a defective temporary step leading from a store to the street, which she knew was under repair, but which was not closed to pedestrians, and this court there held that her contributory negligence was a question for the jury.

On the other hand, a child of thirteen years of age, although not conclusively presumed to be incapable of appreciating and guarding against danger, is held only to such measure of discretion as is usual in those of her own age and experience, and the measure of her responsibility for contributory negligence is her capac-

ity to understand and avoid danger: *Kehler v. Schwenk,* 144 Pa. 348, 22 A. 910; *Neidlinger et ux. v. Haines,* 331 Pa. 529, 200 A. 581. A careful examination of the record in the instant case precludes the conclusion that the minor plaintiff failed, as a matter of law, to exercise the degree of care required of her. The question of the minor plaintiff's contributory negligence, like the question of the city's negligence, was, in my opinion, properly for the jury. I would, therefore, reverse the judgment of the court below and direct judgments to be entered in favor of the plaintiffs on the verdicts of the jury.