## Mason *v.* C. Lewis Lavine, Inc., Appellant.

Argued December 5, 1930. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*Harry Reiss Axelroth,* of *Axelroth & Porteous,* for appellant.—Release of a joint tort-feasor barred this action: Smith v. Roydhouse, Arey & Co., 244 Pa. 474; Conway v. Traction Co., 253 Pa. 211; Seither v. Traction Co., 125 Pa. 397; Williams v. LeBar, 141 Pa. 149; McLaughlin v. Monaghan, 290 Pa. 74; Brink v. Scranton, 85 Pa. Superior Ct. 344; Hughes v. Traction Co., 300 Pa. 55.

*Russell Duane,* with him *Joseph G. Feldman* and *David N. Feldman,* for appellee.—The evidence in this case justified a verdict in favor of plaintiff because of defendant's negligence: Jones v. Caramel Co., 225 Pa. 644; Jaras v. Wright, 263 Pa. 486; Bayuk Bros. v.

Martin, 81 Pa. Superior Ct. 195; Marks v. Kaufmann & Baer Co., 67 Pitts. L. J. 596.

The question whether Segal in the operation of the car in which plaintiff was riding, was guilty of contributory negligence, was properly left by the court below to the determination of the jury: Kilpatrick v. Transit Co., 290 Pa. 288; Harkin v. Transit Co., 278 Pa. 24; McLaughlin v. Monaghan, 290 Pa. 74; McClure v. R. R., 53 Pa. Superior Ct. 638; Phila. & Reading R. R. v. Hummell, 44 Pa. 375; Simons v. Ry., 254 Pa. 507; Smoker v. Locomotive Works, 261 Pa. 341; Wilson v. Dressed Beef Co., 295 Pa. 168; McIlhenny v. Baker, 63 Pa. Superior Ct. 385; Hughes v. Transportation Co., 300 Pa. 55.

The jury, having found that Segal, driver of the automobile which collided with defendant's truck, was not negligent, it follows that no joint tort was committed; and hence the release given by plaintiff to Siegel's insurance company in no way bars her right of action against this defendant: Thomas v. R. R., 194 Pa. 511; McClure v. R. R., 53 Pa. Superior Ct. 638.

The verdict as revised by the court of common pleas sitting in banc, which reduced it from $50,000 to $30,000, was reasonable and no ground exists for any further reduction by this court: Parkin v. Transit Co., 300 Pa. 569; Gerdes v. Booth & Flinn, Ltd., 300 Pa. 586.

OPINION BY MR. JUSTICE SCHAFFER, January 5, 1931:

The plaintiff, Dorothy Mason, was accompanying Will Segal in his automobile, driven by him, from New York to Philadelphia in the early morning of September 9, 1930. Rain and fog had existed throughout their journey. When they reached a point on the Lincoln Highway some twelve miles south of Trenton, about 4:30 o'clock, the automobile ran into the rear of a truck belonging to defendant, which had stopped on the road, and which the testimony in plaintiff's case establishes had no rear warning light on it, and plaintiff sustained

very severe injuries. She was asleep at the time of the collision and knew nothing about the presence of the truck or its condition as to lights. There is no doubt under plaintiff's proofs as to the negligence of the truck driver. She recovered a verdict against defendant, his employer, for $50,000, which was reduced by the court below to $30,000, and from the judgment entered we have this appeal.

Defendant's counsel raises, as a bar to plaintiff's right of recovery, a release which she executed to Will Segal for a consideration of $1,500. This sum was paid to her by the insurance company which indemnified Segal against liability for negligence in the operation of his car. If Segal was a joint tort-feasor with defendant, the release of him by plaintiff prevents her recovery against it: Conway v. Pottsville Union Traction Co., 253 Pa. 211; Smith v. Roydhouse, Arey & Co., 244 Pa. 474; Seither v. Phila. Traction Co., 125 Pa. 397, 402; McLaughlin v. Monaghan, 290 Pa. 74. Plaintiff's counsel do not dispute this proposition. In their brief they say: "A settlement having been effected between plaintiff and Segal's insurance company, it is, of course, conceded that if both parties were negligent and a joint tort was committed, this settlement would bar plaintiff's claim against the present defendant."

This brings us to a critical review of Segal's testimony to see whether he was negligent. He said that from the time they left New York at about twenty minutes of one in the morning, they encountered heavy rain storms with fog that was so dense that it necessitated his stopping altogether at times or driving "very, very cautiously and very slowly. This condition existed practically all the way down until the point of the accident. However, just previous to the accident the rain let up considerably, although it was still very foggy." He had put the dimmers on his lights because if his full lights were on the fog reflected them back "and my vision was almost nil. In fact I could see practically nothing and with my

dimmers the vision was a whole lot more clear." He admitted that at the place of the collision the road is level and straight. Asked as to his speed he declared that at the time of the accident as near as he could estimate "now" he was "running between twenty and twenty-five miles an hour." In a statement he made and signed on September 13th, four days after the accident, he said he was traveling at from thirty-five to thirty-eight miles per hour. He testified that at the point of the collision he could see with his dimmers on "about fifteen or twenty feet." He thus detailed the events immediately preceding and connected with the collision: "I was just coming out of a slight patch of fog, and this truck, or trailer, loomed up before me, just like a house on the road. I really didn't see it until I was almost up on it. I cannot estimate the distance I was when I saw it— possibly six feet—possibly ten feet. I threw on my brakes and the road was rather slippery, and I imagine my brake bands were wet, also. They did not hold. And automatically I threw my wheel to the left, trying to swerve away from the trailer or the truck. I did my best but I crashed. I ran into the truck—and my hood was caught under the bottom of this trailer. The right-hand side of my car crashed under the left-hand corner of the truck, or left center. My hood ran—the entire hood was crushed—the right-hand part was smashed in —the left-hand—the cowl was smashed in—it broke off the door—tore off the fender on that side—tore off the door on the left-hand side of the car where I was seated, and broke most of the glass. After the crash I found myself lying on the highway with the steering wheel in my hand. My car was mashed in under this truck. Miss Mason was in the car, imprisoned under all this wreckage. The only way we could remove her body from the car was to pull the truck forward, which they did and that released my car." He said that under ordinary circumstances with the roadbed dry he could stop his automobile going twenty-five miles an hour within ten or

fifteen feet, but that under the conditions as they existed "it would make it rather hard for me to answer. There is no saying how quickly the car could have stopped if I had more clear vision and had seen the truck sooner than I did." The testimony shows and the photographs taken after the accident indicate that the automobile was demolished beyond repair. They carry the conclusion that there had been a most violent collision at high speed. Indeed this is the inescapable conclusion from Segal's testimony.

Can it be said that one is not negligent who drives an automobile on a rainy, foggy, slippery night at a speed of between twenty and twenty-five miles an hour, whose visibility is limited, owing to the condition of his headlights, to fifteen or twenty feet, who is just coming out of a slight patch of fog, who does not know in what distance he can stop his car under such conditions, but who is of opinion that on a dry roadbed he could stop it within ten or fifteen feet (which we may remark is denied in the tables prepared by automobile engineers of wide experience, where the stopping distance at twenty-five miles an hour is given as fifty-eight feet and at twenty miles as thirty-seven feet) and where he did not observe the truck at the distance he says he should have seen it and not until he was within from six to ten feet of it, too late to avoid colliding with it, and who hit the truck with such force as to demolish his automobile beyond repair? We think it cannot be properly so said. Going at twenty miles an hour he would traverse twenty-nine and one-third feet a second, at twenty-five miles thirty-six and two-thirds feet; at either speed he would travel over the space he could see in less than a second's time. Such celerity of movement under the conditions which he describes could not be determined to be with due care. Furthermore, as his range of vision was from fifteen to twenty feet he was negligent in not seeing the truck until he was within from six to ten feet of it. "A chauffeur......must keep in mind that an obstacle may

appear in his path and so drive his car as to be able to avoid it, under ordinary circumstances...... What would be safe speed in daylight might be very unsafe in a dark and stormy night. A car should be so driven that it can be stopped within the range of its lights. And that is true even when the range is shortened by storm or darkness or both": Filer v. Filer, 301 Pa. 461.

What was said by Mr. Justice KEPHART, then a member of the Superior Court, in McGrath v. P. R. R. Co., 71 Pa. Superior Ct. 1, 3, has complete pertinence when applied to the facts in the case at bar: "The condition of the weather made it more incumbent on the driver to take greater precaution...... He traveled with dimmed headlights; when so traveling he should have been more cautious as the diminished rays of light demanded. It is the duty of the driver of a car, driving on a dangerous highway on a dark, stormy night, to have his car under such control that he may stop or turn it away when objects intercepting his passage come within range of the rays of light from his lamps. If he drives so fast that he cannot avoid what ordinary prudence would make a known obstruction, he is guilty of negligence. It is apparent from the impact of the car that the plaintiff was driving at an excessive rate of speed. However this may be, taking his testimony to be correct, he could have stopped his car in perfect safety and avoided the accident, if he had driven in a careful, prudent manner." This language was quoted with approval in Brink v. City of Scranton, 85 Pa. Superior Ct. 342, 344, where it was also said: "The plaintiff testified that it was rainy, foggy and slippery; that he was driving about twelve or fifteen miles an hour; that he did not know that there was a parkway there, and that he 'did not see the curb until he struck it.' ......that it was rainy and the windshield was wet and he 'couldn't see so very far —twenty-five feet was the best I could see; the windshield was wet,'......the condition of the weather and the water or mist on the windshield made it incumbent

on the driver to take greater precaution...... In the light of......the testimony of the plaintiff that he could see twenty-five feet ahead and could have stopped his car within that distance, the only rational conclusion is that he failed to have his car under proper control or drove ahead when he could not see. In either case the contributing negligence is a bar to his recovery." What was said in Roberts v. Freihofer Baking Co., 283 Pa. 573, can be repeated as applying to the facts before us as Segal details them, "The conclusion that the driver was negligent is unavoidable; it follows from his own testimony, for he says he was going from twenty to twenty-five miles an hour through darkness so intense that the lights would not penetrate it."

As Segal was negligent, and as such negligence concurring with defendant's negligence caused plaintiff's injuries, it follows that he and defendant were joint tort-feasors: Hughes v. Pittsburgh Transportation Co., 300 Pa. 55; Moraski v. P. R. T. Co., 293 Pa. 224. There is a joint tort where there is "a community of fault which occasioned the injury": Cleary v. Quaker City Cab Co., 285 Pa. 241, 246. There being no dispute of Segal's testimony, the effect of it was for the court and the trial judge should have pronounced him negligent as a matter of law, instead of submitting that question to the jury: Smith v. Roydhouse, Arey & Co., 244 Pa. 474; Peterson v. Wiggins, 230 Pa. 631; Brayman v. DeWolf, 97 Pa. Superior Ct. 225, 229. The release itself, growing out of the same accident, cast on plaintiff the burden of showing that defendant's negligence alone occasioned the injury (Peterson v. Wiggins, 230 Pa. 631; Smith v. Roydhouse, Arey & Co., 244 Pa. 474) ; not only did she fail to meet this burden, but her own case disclosed that Segal was a joint tort-feasor and that such joint negligence was the proximate cause of her injuries: Riff v. Pittsburgh Rys. Co., 298 Pa. 256.

However much we may sympathize with the unfortunate plaintiff, we cannot decide otherwise, under the

law, than that in releasing Segal she barred her right to recover from defendant.

The judgment is reversed and is here entered for defendant.