Nalevanko *v.* Marie et al., Appellants.

Argued October 6, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Carroll Caruthers,* with him *Paul J. Abraham,* for appellants.

*Wm. S. Rial,* with him *H. E. Marker,* of *Marker & Rial, M. J. K. Davis* and *John A. Walls,* for appellee.

OPINION BY MR. JUSTICE BARNES, November 12, 1937:

On December 26, 1934, at approximately eleven o'clock p. m., George J. Nalevanko, a coal miner, fifty-nine years of age, while walking toward Greensburg along State Highway Route No. 119, known as the New Alexandria Road, was struck and instantly killed by a Ford sedan operated by Tony Marie, one of the defendants. The automobile was proceeding eastwardly upon the highway in the direction of Luxor. It was owned by Louis Marie, codefendant herein, and used by him in his business of carrying passengers for hire upon a regular schedule between Luxor and Greensburg. He held

a license from the Public Service Commission for this service and similar licenses for service between Kecksburg and Greensburg, and for a call and demand service out of Luxor and vicinity.

This action of trespass was instituted by plaintiff on behalf of herself and a minor child against Tony Marie, the driver of the car, and Louis Marie its owner. An affidavit of defense was filed by Louis Marie denying liability for the death of Nalevanko, alleging that on the evening in question the automobile was not operated upon his business, and that Tony Marie was not in his employ.

The jury found for the plaintiff against both defendants, rendering a verdict for $7,318.88, which the court in banc reduced to $5,650. From the refusal of their motions for judgment non obstante veredicto and for a new trial, the defendants have taken this appeal.

There were three witnesses to the accident who testified at the trial, viz., the defendant, Tony Marie, Pauline Mayernick, who was riding with him at the time, and James Bollinger, a pedestrian upon the highway.

Tony Marie testified that he was driving at a speed of between 35 and 40 miles an hour, and when he first saw the decedent, he was directly in the path of his automobile, walking westwardly in the center of the road about fifty feet away. He stated that although he "put on the brakes and swerved to the left" as far as he could, the right front fender struck Nalevanko. He said "I went about one hundred yards and almost made a dead stop to go back, but I became excited and went on home."

Miss Mayernick expressed no opinion concerning the speed at which the car was being driven. Her testimony is substantially similar to that of Tony Marie, except her recollection was that Nalevanko was walking about one yard from the south side of the road. James Bollinger at the time in question was walking eastwardly along the south side of Route 119 to his home in Crow's Nest from his place of employment at the

Penn Albert Hotel in Greensburg. According to this witness, he noticed Nalevanko approaching on the north side of the road, and that immediately prior to the occurrence the decedent walked diagonally across the road from the north to the south side until within about a yard of the witness, when he was struck by the automobile.

C. E. Gunderson, a highway patrolman, who arrived at the scene shortly after the accident happened, said there were skid marks beginning about one hundred feet to the east of the place where the body was found, and they extended from the south side of the road up to the center and beyond. The damage to the car indicated that Nalevanko was struck by the right front fender and headlight.

Referring now to defendants' motions for judgment non obstante veredicto, we are confronted by the following facts. According to the record, the night was clear and the visibility excellent. There were no turns in the highway at the place where the accident occurred. It is not contended that the deceased stepped suddenly from the side of the road, or from behind some object directly into the path of his automobile. Defendant concedes that when he first saw Nalevanko, he was walking in the middle of the highway, still some distance from the automobile. There is no question that decedent had the right to be walking along the road in the manner described. His right was at least equal to that of the defendants to operate a vehicle thereon.

In our opinion there was sufficient evidence to submit the question of the driver's negligence to the jury. It is no excuse for him to say that he had insufficient time to stop the car, or avoid striking the decedent after he first observed him walking in the highway. It would indicate either that the car was being driven at such a speed that it could not be stopped within the assured clear distance ahead, or that Tony Marie was not sufficiently observant of conditions upon the highway. The

skid marks found on the highway, and the severe injuries received by the decedent afford evidence of fast driving, and the inability of the driver to control the car or bring it to a stop. In *Janeway v. Lafferty Bros.*, 323 Pa. 324, we said (p. 327) "The decisions of this court have firmly established the rule that it is the duty of the driver of an automobile so to operate his machine in the darkness as to be able to stop or avoid any obstacle which may present itself within the range of his lights: *Filer v. Filer*, 301 Pa. 461; *Mason v. Lavine, Inc.*, 302 Pa. 472; *Simrell v. Eschenbach*, 303 Pa. 156; *Cormican v. Menke*, 306 Pa. 156; *Shoffner v. Schmerin*, 316 Pa. 323."

As to the liability of the defendant Louis Marie, the owner of the automobile, it appears that, on the day in question, Tony Marie left Luxor and drove the 6:30 p. m., scheduled trip to Greensburg, and that when the accident took place he was returning to Luxor, the home station of this licensed vehicle. Tony Marie testifies that another brother, Joe Marie, asked him to drive the scheduled trip from Luxor to Greensburg, and after he had completed that run, he started back to Luxor upon his own mission of pleasure. Both defendants admit that on other occasions Tony Marie had served as a driver in his brother Louis' business. It is for the jury to determine whether or not at the time of the accident the vehicle was being used in the business of this defendant.

Where the evidence establishes that a person is injured by the negligence of one in charge of a business automobile, bearing the trade name, displayed thereon in such a manner as trade or business names are usually placed on vehicles used for trade or business purposes, such facts are sufficient (1) to raise the presumption that the car in question was owned by defendant and was being used by the person in charge, for defendant's business purposes; and (2), when such presumption arises, it entitles plaintiff to have his case submitted to

the jury: *Hartig v. American Ice Co.,* 290 Pa. 21, 30, and cases cited therein. See also *Talarico v. Baker Office Furniture Co.,* 298 Pa. 211; *Readshaw v. Montgomery,* 313 Pa. 206.

We can find in this record no evidence sufficient to overcome the presumption that the automobile in question was being operated upon the business of Louis Marie. The question of defendants' negligence, the decedent's contributory negligence and the application of the rule of respondeat superior to Louis Marie, were properly submitted to the jury, which has decided these questions in favor of plaintiff. Viewing the evidence in a light most favorable to plaintiff, and after a careful study of the record we have reached the conclusion that the refusal of the motions for judgment was proper.

In support of their rules for new trial the defendants contend (1) That a juror should have been withdrawn because of the improper remarks of plaintiff's attorney in his opening address to the jury; (2) That Michael Popson, the Greensburg policeman, to whom Tony Marie surrendered, should not have been permitted to testify concerning a conversation between them four hours after the accident when Tony Marie was under arrest, and which tended to establish his responsibility for Nalevanko's death; (3) That the verdict was excessive.

We find nothing in the remarks of plaintiff's counsel that justified the withdrawal of a juror. These statements were to the effect that Tony Marie "kept on going although he knew he hit the man . . . although he knew the man was lying on the road." The propriety of counsel's arguments and remarks to the jury is to be determined by the trial court under all the existing facts and circumstances at trial. An application for the withdrawal of a juror is addressed to the sound discretion of the trial court, and the refusal of a motion to that effect, because of objectionable remarks to the jury by counsel, is reviewable for abuse of discretion only: *Dan-*

*nals v. Sylvania Twp.*, 255 Pa. 156; *Kelly v. Scranton Ry. Co.*, 270 Pa. 77; *Com. v. Westwood*, 324 Pa. 289; *Lopresti v. Sulkin*, 49 Pa. Super. Ct. 417.

The second contention likewise is without merit. Defendants cannot complain because of the admission of the testimony of Michael Popson concerning his conversation with Tony Marie in the Greensburg jail. Whatever defect there may have been in the introduction of this evidence, it was subsequently made admissible by the defendants themselves when their witnesses testified to the identical facts for the defense. A party cannot complain of the admission of incompetent evidence when the facts sought to be proved thereby are subsequently established by opposing proofs. See *Van Eman v. Fidelity & Casualty Co. of N. Y.*, 201 Pa. 537; *Reznor Mfg. Co. v. Bessemer & Lake Erie R. R. Co.*, 233 Pa. 369; *Ohio Valley Lumber Co. v. Blanarik*, 292 Pa. 574; *Cabe v. Cannoe*, 304 Pa. 497; *Stewart v. Pen Argyl Nat. Bank*, 307 Pa. 328.

It is settled that the question whether the verdict is excessive is primarily for the trial court, and that its determination thereof will not be reversed on appeal except for manifest abuse of discretion: *Gail v. Philadelphia*, 273 Pa. 275; *Potts v. Guthrie*, 282 Pa. 200; *Martin v. Letter*, 282 Pa. 286; *Filer v. Filer*, 301 Pa. 461. We find nothing in the record that would call for substituting our judgment for that of the court below on this point, and the question was properly determined when the verdict was reduced from $7,318.88 to $5,650. The court below was justified in its refusal to grant a new trial to the defendants, or either of them.

Judgment affirmed.