Neidlinger et ux. *v.* Haines, Appellant.

Argued April 13, 1938.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

530

*Chas. E. Berger,* with him *J. F. Mahoney,* for appellant.

*Vincent J. Dalton,* for appellees.

OPINION BY MR. JUSTICE BARNES, June 30, 1938:

The plaintiffs reside in Schuylkill County on a farm located on Highway Route 443 between Pine Grove and Suedberg. On the morning of December 31, 1934, Paul and Gladys, minor children of plaintiffs, while upon that highway on their way to the public school, were struck and instantly killed by the defendant's coal truck. The school is located on the same highway about a half mile to the east of plaintiffs' farm. Gladys was then thirteen, and Paul was eleven years of age. Gladys was partially crippled. Although she could walk within her home without crutches, and outside with one crutch, her condition was such that she was required to go to school in a wheel chair equipped with pedals similar to those of a bicycle.

On the morning of the accident the two children left home between eight and nine o'clock, accompanied by their older brother John, who was fourteen years of age. John carried their three lunch baskets, and Paul pushed his sister in the wheel chair. John walked with them approximately half the distance to school, and then proceeded alone. Upon his arrival at the school he put away the lunch boxes and stood at the east window watching for his brother and sister to arrive, so that he could as-

sist Paul in carrying the wheel chair into the school house.

Prior to the accident Paul was pushing Gladys in the wheel chair along the right side of the highway, close to its edge. About four hundred and fifty feet east of the schoolhouse is a "School Slow" sign facing toward the east, the direction from which the children and defendant's truck approached. After Paul had wheeled his sister about one hundred and twenty-five feet past the sign, and when they were within about three hundred feet of the school, a coal truck owned by the defendant and operated by his employee, loaded with five tons of coal, came from the rear of the children at a speed of thirty miles an hour, and struck and killed them instantly. The force of the impact was so great that Paul was thrown some thirty feet over the right front fender of the truck, while Gladys was hurled four to five feet into the air, and to the right of the roadway. The wheel chair was demolished. The truck went eighty-five or ninety feet before it was brought to a stop.

The highway is of concrete construction and is eighteen feet in width. Where the accident happened there is a straight and level stretch for a distance of two hundred and seventy-five feet, affording an unobstructed view over two hundred feet on either side of the "School Slow" sign. Both to the east and west of this level stretch the grade is slightly downward. The berm of the road consists of dirt shoulders varying in width from three to seven feet on the north side and of a greater width on the south side. There were no other vehicles on the highway at the place where the truck hit the children. On the day in question it was clear, the sun was shining, and the highway was dry.

This suit was instituted by the parents to recover damages for the death of their children. The jury rendered a verdict in favor of the plaintiffs, and, at the request of defendant, indicated the amount awarded for the loss of services of each child, for the funeral ex-

penses and for the value of the wheel chair. The defendant's rule for new trial, and the motion for judgment non obstante veredicto were overruled, and from the entry of judgment on the verdict the defendant has appealed.

The defendant concedes that the question of his negligence was for the jury's determination. He does not contend that the plaintiffs permitted children of tender years to play upon or roam over a dangerous highway unattended, but urges that they were contributorily negligent in exposing the children to danger by allowing them to walk and to push the daughter in a wheel chair along a public highway, accompanied only by the older brother, who subsequently left them to their own resources.

In the absence of sidewalks the rights of pedestrians upon the highway are equal to those of motor vehicles; and a pedestrian walking along the right side of a paved roadway is not required to turn and look for approaching traffic: *Petrie v. E. A. Myers Co.*, 269 Pa. 134; *King v. Brillhart*, 271 Pa. 301; *Nalevanko v. Marie*, 328 Pa. 586; nor is he required to step off the highway to permit the automobile to pass: *Petrie v. E. A. Myers Co.*, supra. See also *Wilson v. Metropolitan Pet. Corp.*, 324 Pa. 321; and *Derrickson v. Tomlinson*, 326 Pa. 560. In our opinion the plaintiffs are clearly not guilty of contributory negligence as a matter of law.

Since it is not negligence to walk along a highway in the absence of sidewalks, it cannot be held that parents, who permit their children to do so, are at fault. To hold otherwise would be to declare that it is negligent conduct to adopt the accepted and usual means of pedestrian travel along rural highways. The rights of children to walk upon the highway are no less than that of adults. As was said by Judge KELLER in *Hammaker v. Watts Twp.*, 71 Pa. Superior Ct. 554, 566: "A healthy, bright, intelligent child of nine years of age had as much right to walk on it as an adult, and to charge parents of

such a child with culpable negligence for permitting it to do so, would be to convict half our rural population of negligence, for nothing is more common than to see children of that age, and even younger, trudging the country roads while going to and returning from school. To state the proposition is to refute it; for, in the absence of an unbending rule of law, what a large proportion of reasonably prudent people are accustomed to do is not negligence: *Kay v. Penna. R. R. Co.*, 65 Pa. 269, 273."

The measure of children's responsibility for contributory negligence is their capacity to understand and avoid danger. The plaintiff's children in this case were eleven and thirteen years of age, respectively, and consequently cannot conclusively be presumed to be incapable of appreciating and guarding against danger: *Nagle v. Allegheny Valley R. R. Co.*, 88 Pa. 35; *Kehler v. Schwenk*, 144 Pa. 348; *Parker v. Washington Elec. St. Ry. Co.*, 207 Pa. 438. However, it is unnecessary to consider whether the children failed to exercise the degree of care required of children of their age and experience, because the record is devoid of the slightest suggestion that either of the children was guilty of conduct contributing in any way toward the accident. It shows that adults could not have been more careful than were the children in this case. They were lawfully upon the highway on the extreme right, paved portion thereof, and they were entitled to assume that they would not be struck from the rear by oncoming automobiles. The failure of the children to anticipate that a motorist would run them down in broad daylight, when they were in plain view, with nothing to obstruct his vision, without any changing of course on their part, is not negligence: *Adams v. Fields,* 308 Pa. 301; *Polonofsky v. Dobrosky,* 313 Pa. 73; *Dempsey v. Cuneo E. Press Ink Co.,* 318 Pa. 557.

This case is controlled by the recent decision of this Court in *Lucas v. Bushko,* 314 Pa. 310, where we re-

versed a judgment of nonsuit in the court below. The facts are stated by Mr. Chief Justice FRAZER, as follows (p. 312): "The accident occurred about four o'clock in the afternoon of a clear summer day, on a concrete highway running between the Boroughs of Archbald and Eynon in Lackawanna County. The child, a lad of nine years, was struck at a point where the highway is straight for a distance of 400 feet in one direction and 1,300 feet in the other. The injured boy and a playmate were on the road on a tricycle about two feet south of the center line. . . . There were no obstructions on the highway and nothing to interfere with the driver's vision. Moreover, had he been looking, he must have observed the children from a considerably greater distance than 150 feet."

The defendant's objection to the admission of evidence of the earning powers of other children in the vicinity is not well taken. A fair reading of the testimony indicates that this evidence was introduced for the sole purpose of showing the average earnings of children employed in the various industries in that district. The purpose was not, as the defendant alleges, to obtain from the witnesses an expression of their opinion concerning the value of the services of the deceased children. The purpose for which the evidence was introduced is a proper one.

In cases of this character evidence of the earnings of children in the same locality is admissible for the purpose of indicating the probable earning capacity of the deceased child. Otherwise the jury would have no facts before it upon which to found the basis of a reasonable opinion of the probable earnings of a deceased child. In *Ditchfield v. Tharp,* 75 Pa. Superior Ct. 563, 566, where a similar question was involved, the court said: "The only remaining assignment complains of the action of the court in admitting certain evidence tending to show the earning capacity of boys in a silk mill in that locality. It was necessary for the jury to ascertain from the

evidence what would have been the probable earning capacity of the deceased boy during the period of time when his earnings by law belong to his parents. The evidence complained of tended to enable the jury to reach a reasonable conclusion on that subject."

Here the evidence complained of consisted of the testimony of employers of male and female minors between the ages of sixteen and twenty-one years in different industries in the locality concerning the average wages of boys and girls employed by them. The testimony concerning the earnings of girls was restricted to those who by reason of physical handicaps were unable to do work requiring that they be on their feet any considerable length of time. It is clear that evidence of this character is the most competent obtainable to qualify the jury to determine the extent of the plaintiff's loss, because only on the basis of such evidence may the jury properly estimate the plaintiffs' damage.

The defendant argues that the amounts of the verdicts awarded for the loss of the services of the two children are excessive. It is well settled that a verdict of a jury will not be disturbed unless the amount of the award is so grossly excessive as to shock our sense of justice: *Linhoss v. Hodgson*, 310 Pa. 339; *Walker v. Perkins*, 319 Pa. 469. We find no merit in this objection. The economic circumstances of the plaintiffs indicate that the services of their two deceased children would have been required about the farm; and the testimony amply supports possible future earnings of the children adequate to sustain the verdicts rendered. That one of the children was a cripple does not affect this conclusion because the medical prognosis of her condition was favorable, and the testimony of her probable future earnings was based upon her limited physical capabilities.

Judgment is affirmed.