**GARRETT et al. v. FAUST et al.**

Civ. No. 7806.

United States District Court
E. D. Pennsylvania.

Nov. 7, 1949.

See, also, D.C., 8 F.R.D. 556.

Arthur H. Bartelt, Austin, Texas, for plaintiffs.

Cornelius C. O'Brien, Philadelphia, Pa., for defendants.

B. M. Zimmerman, Lancaster, Pa., for Railway Exp. Agency.

McGRANERY, District Judge.

Plaintiffs, who operate a small turkey farm in Texas, brought suit alleging that defendants, who maintained a large hatch-

ery in Pennsylvania, had entered into a contract for the purchase of their eggs, and then failed to live up to their agreement. Plaintiffs recovered a verdict of $17,000 at the trial. Defendants now move to set aside the verdict and judgment, for a judgment in accordance with their motions for a directed verdict, and, in the alternative, for a new trial.

Defendants first contend that the amended complaint was based upon fraudulent misrepresentations made by John C. Faust in inducing the plaintiffs to accept a reduced price for turkey eggs and in unlawfully cancelling the contract. It is then argued that no evidence or testimony of any kind was offered to support the allegations of misrepresentations. However, the argument is irrelevant since the jury need not have found fraud to support its verdict. There was ample evidence in the record from which the jury could have found mere breach of contract, and it was on this theory that the case was submitted to the jury, with no claim of surprise by defendants' counsel. Accordingly, the language of the Court of Appeals for the Third Circuit in Scott v. Baltimore & Ohio Railroad Co., 151 F.2d 61, 64, seems especially pertinent: "We may assume, arguendo, that plaintiff started his action on one theory which his proof did not support. Then the proof, we may assume, sustained recovery on another ground. * * * The only injustice to the defendant in such a situation is when he is compelled to go on with the trial and meet a new point which is a surprise to him and on which he has had no opportunity to prepare. That situation is not claimed by the defendant to exist here and, therefore, his point completely disappears."

See also Federal Rules of Civil Procedure, rule 15(b), 28 U.S.C.A., and Moore's Federal Practice, volume 3 (2nd. Ed.), section 15.13.

However, it should be noted, as well, that it is not true, as defendants contend, that there was no evidence to support an allegation of fraudulent misrepresentation. There are in evidence letters from John C. Faust to T. A. Garrett (Dec. 4, 1945 and Jan. 28, 1946) from which a representation

on Faust's part may fairly be inferred that the bottom had dropped out of the turkey market, and that for this reason or other reasons beyond his control the price of eggs was being changed pursuant to the contract. It was also suggested to the plaintiffs that they sell their breeders, inasmuch as the defendants were curtailing their operations by 50%. But their are also in evidence certain records of the defendants from which the jury may reasonably have concluded that the representations contained in the letters were deliberately untrue. The defendants' egg purchase sheets indicate that at the time of the cancellation of the contract by defendants, they were buying eggs in large quantities and even taking on new sellers. The lists of the defendants' sales of poults tend to indicate that those sales were going very well and at prices which, under the contract, would not justify a reduction in the price of eggs or a cancellation. There was, therefore, evidence from which the jury might have found that fraudulent misrepresentations were made by the defendants.

It is also maintained that the Court erred in denying the defendant's motion to drop Cora Faust as a party defendant because there was no evidence upon which her liability to the plaintiffs could rest. But an examination of the record discloses otherwise. The acts specifically complained of were those of John C. Faust, but Mr. Faust himself testified to sufficient facts to establish that he and his wife conducted the business jointly, or at the very least that Mr. Faust acted as the agent of Mrs. Faust in managing the business and doing the acts complained of. Although he testified that Cora Faust owned and "operated" the hatchery, he also stated that he was the manager; that the real estate on which the business was located was owned by them jointly; that his pay as manager consisted of his taking money whenever he needed it, usually by merely writing a check; that either he or his wife could sign business checks; that he signed most of the checks to the turkey-egg sellers. Further, all communications to plaintiffs were written by John C. Faust as "Mgr." of the hatcheries, and in those communications he used the

first person plural as well as the first person singular. The jury could easily believe, as it obviously did, that the acts of John C. Faust were also the acts of Cora Faust, and on that basis it was not error to refuse to drop Cora Faust from the case.

■ With respect to the item of damages, the defendants argue that any statement to the jury by the Court or counsel that calls their attention to claims and amounts not supported by the evidence is error, and this is apparently aimed at the Court's instructions to the jury. A perusal of the record discloses that there was ample evidence to support the amounts referred to in the instructions, although that evidence was not always presented in the most orderly fashion. An error in addition of 90¢ by the Court, which crept into the instructions, is hardly prejudicial. Moreover, the jury was specifically charged that it was the sole judge of the facts, and that if its recollection of the facts differed from any factual reference made by the Court, the jury's recollection was to prevail. Thus the Court took pains to avoid the mere adoption of its calculations by the jury.

■■ Defendants further assign as error the denial of their motions for the withdrawal of a juror. At the conclusion of his opening address to the jury, counsel for the plaintiffs mentioned the sum of $36,000 as the damages in the case. Counsel was not a member of the Pennsylvania bar and was not familiar with the Pennsylvania rule which prohibited such action. Counsel for the defendants immediately moved for the withdrawal of a juror. The motion was denied, but the Court cautioned the jury to "get it out of your head that it was even mentioned. It does not belong in there * * *." In view of these circumstances, I am not persuaded that the denial of the motion was error. The Pennsylvania law, as set forth in Clark v. Essex Wire Corp., 361 Pa. 60, 65, 63 A.2d 35, 37, is that the "propriety of counsel's arguments and remarks to the jury is to be determined by the trial court under all the existing facts and circumstances at trial and that an application for the withdrawal of a juror is addressed to the sound discretion of the trial court, and the refusal of a motion to that effect, because of objectionable remarks to the jury by counsel, is reviewable for abuse of discretion only. Nalevanko v. Marie et al, 328 Pa. 586, 195 A. 49; Dannals v. Sylvania Twp., 255 Pa. 156, 99 A. 475, 4 A.L.R. 409; Kelly v. Scranton Ry. Co., 270 Pa. 77, 112 A. 748."

In his closing address to the jury, counsel for the plaintiffs stated that the defendants had collected for cracked eggs from both the plaintiffs and the Railway Express Agency. Defendants again moved for the withdrawal of a juror on the ground that there was no evidence that the defendants had done any such thing. Four exhibits, marked P-7, P-7A, P-7B and P-7C, each dated July 17, 1946, each being a claim filed by defendants for cracked eggs of T. A. Garrett, show that they did collect for cracked eggs from the express company, and Exhibit P-9, defendants' egg purchase sheets, discloses that they also collected for the same cracked eggs from Garrett.

■ It is also argued that the Court's refusal to charge the jury as to the applicable rules of conflict of laws and the measure of proof required to establish damages constitutes error because the jury was permitted to conjecture as to the loss of profits allegedly suffered by the plaintiffs. But, under the Court's instructions, the jury was not permitted to conjecture, nor do I believe it did. The jury was instructed that damages must have a degree of certainty, and there was an abundance of competent evidence from which the jury could assess damages with reasonable certainty. The plaintiff, T. A. Garrett, took the stand and testified that he had been in the turkey business for 30 years. He put in evidence his records along with an explanation of the manner in which they were kept. They were not the precise accounts of a large corporation, but informal personal records kept by one not trained as a bookkeeper, and busy with other phases of the turkey-egg business. While the accounts are not free from difficulties for an outsider, the jury, by a conscientious exercise of its function, could have derived much information from them. In addition, Mr. Garrett

486

testified in detail as to what had to be done in order to prepare for and carry out the turkey program outlined by Mr. Faust in his letters, and the cost of that program. He testified as to the number of hens he had, the number he acquired to operate under the contract, and the number he disposed of as a result of the cancellation. He also testified that the turkey hens lay an average of 70 eggs per season. The price of the eggs was set forth in the contract and covered in the instructions. And Mr. Garrett testified as to the normal net profit per hen, in his expert opinion as an experienced turkey farmer. Further to assist the jury in reaching a considered verdict, interrogatories were submitted to them concerning the amount owed to the plaintiffs for eggs shipped, the amount of the plaintiffs' net profits lost for the balance of the season after the cancellation of the contract, and the amount of the plaintiffs' net expenses incurred in preparing for the egg-laying season. Consequently, I cannot agree that the verdict arrived at by the jury must have been reached by conjecture. Indeed, I believe that the verdict was conscientiously considered and fair in its result.

■ Defendants assign as error the failure of the Court to instruct the jury as to defendants' requests for instructions which were "affirmed". The oversight is to be regretted, but any instruction requested by a party and not submitted to the jury must be deemed denied. Under Rule 51, the "affirmation" of counsel's requests for instructions is merely informative of the proposed action of the Court. In the case of an instruction "affirmed" but not given to the jury, counsel is not prejudiced by being forced to pattern his argument to a proposed charge lacking in the particular instruction, as he would be in the case where the instruction was at first denied and subsequently given to the jury. Counsel for the defendants, after the charge, took a general exception, but did not object or call the Court's attention specifically to the oversight, as he should have. In the absence of such specific objection by counsel for defendants before the retirement of the jury, and particularly in view of the fact that the jury was, in any event, fully instructed, I do not regard the oversight as error. Compare Terminal Railroad Ass'n of St. Louis v. Staengel, 8 Cir:, 122 F.2d 271, 136 A.L.R. 789, certiorari denied 314 U.S. 680, 62 S.Ct. 181, 86 L.Ed. 544.

■ Defendants complain of the participation of the Court in the trial of the cause, particularly in the examination of the plaintiff, T. A. Garrett. This participation, I believe, was a matter resting within the discretion of the Court, and objectionable only for the abuse of that discretion. Bissonette v. National Biscuit Co., 2 Cir., 100 F.2d 1003. Where a trial threatens to bog down in a morass of confusion, it is not only the right but the duty of the trial judge to lend his assistance in an attempt to preserve an orderly procedure. Here, only this duty was exercised by the Court.

■ Finally, the defendants maintain that the Court erred in its charge to the jury by an instruction that the defendants had offered no evidence. Technically, the defendants have not offered any evidence. It is true that books produced by the defendants were in evidence, offered by the plaintiff. And defendants argue that evidence in these books is their evidence, supporting their defense. Be that as it may, the purport of the instruction to the jury was not technical. The instruction was merely to the effect that the jury might make use of an inference, if it saw fit, in connection with the failure of the defendants to take the stand on direct examination, failure to cross-examine the plaintiff T. A. Garrett, and failure to introduce further relevant evidence in their behalf, with the following proposition as a guide: "Where relevant evidence is within the control of a party to whose interest it would naturally be to produce it and he fails to do so, without satisfactory explanation, and produces no evidence or weaker evidence, an inference is justifiable that it would be unfavorable to him."

The jury might well, under the circumstances of the trial, have felt that there was no explanation for the failure of the

defendants to introduce stronger evidence, which the jury might have believed to be within the defendants' control by direct testimony, cross-examination or otherwise.

Accordingly, the defendants' motions will be denied.

