## Eisenbrown v. Muhlenberg Township et al.

*Luther C. Schmehl* and *Robert G. Bushong*, for plaintiffs.

*Paul N. Schaeffer* and *John A. Rieser*, for Muhlenberg Township, defendant.

*Ralph C. Body*, for Reading Fair Co., defendant.

SHANAMAN, J., January 3, 1950.—On September 12, 1947, Sarah A. Eisenbrown, while walking in the highway in Muhlenberg Township, near the property of the Reading Fair Company, fell into a hole on the roadway and suffered injuries. After hospitalization for weeks, she returned to her home where she lived with her husband, Edward P. Eisenbrown. Mr. Eisenbrown died subsequently, and after his death his executor and his widow brought suit for their respective claims for damages caused by the accident. They named as defendants the Township of Muhlenberg, and the Reading Fair Company. A trial was had at which the court gave binding directions for the Reading Fair Company. The jury awarded the executors of Edward P. Eisenbrown $2,534.90, and awarded Sarah A. Eisenbrown in her own right the amount of $5,055.50 against the Township of Muhlenberg. The Township of Muhlenberg obtained a rule for new trial. The only point pressed is that the verdicts were excessive. The motion for new trial assigned, among other reasons, excessive verdict only as to the amount awarded to Sarah A. Eisenbrown, in her own right. Nevertheless, in weighing this assigned reason, which is the sole question before us, it is well to have in mind the amount awarded to the estate of her deceased husband.

His expenses were $1,267.45, to which the jury added a like amount for loss of consortium. She was in the hospital for 10 weeks and afterwards was in a leg-cast at home for six weeks. She was not permitted weight bearing for four weeks more, and afterwards used, under medical direction, a brace for insecure or un-

even walking. Her functional recovery has been good, but not perfect, and she was for sometime after the cast was removed partially unable to work until her convalescence was complete. Her husband, Edward P. Eisenbrown, died October 17, 1948. The verdict for Mrs. Eisenbrown consists of $50.50 expenses which accrued after her husband's death, and $5,005 for her pain, suffering and inconvenience. The injury consisted of a compound fracture of the left tibia at the lower portion of the middle third of the calf, and a simple fracture of the fibula. The injury was quite painful and required sedatives. The skin over the wound was sutured, the fracture reduced, and the leg immobilized in a plastic cast from the toes to the groin. The leg was in a cast for 16 weeks and could bear no weight for four weeks thereafter. A little weakness and loss of strength persists, and she is instructed to wear a brace in case she has to walk on uneven surfaces, or where her walking would for any reason be unstable. She was about 73 years old at the time of the accident.

It may be conceded that the verdicts are somewhat larger than would have been sustained by us many years ago. Of late years, however, the purchasing power of the dollar has declined greatly, and it is fair to assume that the jury in the present case considered this real decline in the actual value of the monetary unit in arriving at the amount of the awards. In the case of Nusser v. United Parcel Service of New York, 65 A. (2d) 549 (New Jersey Superior Court, App. Div., April 6, 1949), the court sustained a verdict for $15,000 for a man 59 years of age, who suffered no financial loss other than expenses of about $600. Plaintiff in that case had suffered a fracture of the pubic bone and ischium, had been hospitalized 10 days, had been bedridden seven weeks, had worn a brace for five months, and suffered considerable pain, which he still

suffered when at work or in bad weather. The court said:

"We think that the jury's verdict is not excessive, in the light of the plaintiff's serious injuries and the pain and suffering he endured and continues to suffer. In addition, it may well be that the jury considered the deflated value of the dollar. Judicial notice thereof may be properly taken and the jury, in the exercise of its judgment, could have properly considered it in assessing the damages against defendant. In these days of the high cost of living and consequent decrease of the purchasing power of the dollar, one cannot well overlook or ignore the effect of such economic conditions when called upon to determine, as the jury did here, the amount of damages that would fairly and reasonably compensate one for his pain and suffering and disability proximately caused by another's negligence. Our conclusion is expressed quite pertinently and tersely by Justice Minturn in Bowes v. Public Service Railway Co., Sup. Ct. 1920, 94 N. J. L. 378, 110 A. 699, 700, when, speaking for the court, he stated: 'The only question presented is the alleged excessiveness of the damages. The word "excessive" has a relative meaning. What may be deemed excessive in one environment and social order may be inadequate compensation in another. At a period when the purchasing power of the dollar has in the language of the day been "cut in half", the value of the sum awarded here is not to be estimated in the numerical quantum of the recompense, but in its comparative ability to furnish the necessities of life. Of these facts the court must take judicial notice.' "

In Pennsylvania the courts will take judicial notice of matters of common knowledge: Holt v. Pariser, 161 Pa. Superior Ct. 315, 321-22. The decline in the value of the dollar is a matter of common knowledge. In the

case of Neidlinger et ux. v. Haines, 331 Pa. 529, our Supreme Court said, p. 535:

"It is well settled that a verdict of a jury will not be disturbed unless the amount of the award is so grossly excessive as to shock our sense of justice."

The rule for new trial must be discharged.

And now, to wit, January 3, 1950, defendant's rule for new trial is discharged.