## Smith v. Verna

*Raymond J. Broderick*, for plaintiff.
*Henry J. Lotto*, for defendant.

WATERS, J., May 7, 1963.—Defendant, J. Russell Fawley, Jr., has appealed from this court's order dismissing his exceptions to a finding by the court in favor of plaintiff and against both defendants in the sum of $1,666.50. Plaintiff was injured as a result of an automobile accident which occurred at Hermit Street and Ridge Avenue in the City of Philadelphia.

Plaintiff, on February 26, 1962, at about 5:45 p.m., left her employer's home at 6161 Hermit Street, and walked west on Hermit Street to catch a bus at the

corner of Ridge Avenue and Hermit Street. It was dark and raining and foggy. There is a sidewalk on Hermit Street in the block where plaintiff worked, but there is no sidewalk on Hermit Street between Houghton Street and Ridge Avenue, which is the block in which the accident took place. Instead of a sidewalk there is an unpaved, soft shoulder, about two feet wide, between the paved portion of the road and the hedges or fences of the property owners in this block. While plaintiff was walking on this shoulder of the road she was struck on her left side in the rear by defendant Verna's car approaching from a westerly direction. She identified the defendant Verna as the man who came over to her at the scene of the accident, and stated that he was sorry he hit her and told her that he did not see her. Later that same evening, at the police station, he again told her he was sorry he hit her and that he did not see her. She did not see any lights from the car that struck her and stated there were definitely no lights on the car. She was walking close to the hedges, off the highway.

Defendant, Verna, admitted that he did not see plaintiff prior to the accident. He heard a thump, stopped his car and saw plaintiff sitting on the ground. In a statement which he gave to the other defendant, Mr. Verna admitted hitting plaintiff and stated that there was a mark, a "brush mark" on the right side of his car and that when he heard the thump he thought he hit an ash can.

Defendant contends that plaintiff's evidence failed to show any "specific negligence" on his part; that plaintiff failed to sufficiently visualize the accident so that negligence could be inferred. It is, of course, axiomatic that the mere happening of an accident is insufficient to establish liability on the part of a defendant and that plaintiff has the burden of proving that defendant was negligent and that such negligence was

the proximate cause of the injury. It is sufficient to note that the evidence sustains several findings of negligence—that defendant Verna was inattentive; that he failed to properly guide and control his vehicle so as to avoid striking plaintiff who was or should have been plainly visible to him. The fact finder could also have found that defendant, Verna, was operating the vehicle without lights and failed to sound or give any warning of his approach.

The case of Dennis v. Munyan, 139 Pa. Superior Ct. 310 (1939), is similar to this one. In the Dennis case, plaintiff was walking on a paved road, without sidewalks, in weather that was dark, raining and misty, with poor visibility. Defendant asserted his headlights were lighted; that he did not see plaintiff until she was about 22 feet from him; that he was unable to stop his car prior to striking her. The court stated, at page 312: "Defendant clearly was negligent. 'It is the duty of a person operating a motor vehicle in the dark to have it under such control as to be able to stop or avoid any obstacle which may present itself within the range of his lights': Nalevanko v. Marie et al., 328 Pa. 586, 195 A. 49. Accordingly, it was defendant's duty to observe the roadway in front of him and if, on account of the rain and mist or from any other cause, the range of his headlights was only 22 feet, the obligation was on him to reduce the speed of his automobile so that he could, if necessary, stop within that limited clear distance ahead: Act of June 22, 1931, P. L. 751, sec. 1002(a). Defendant either drove too fast under the circumstances or he was not giving attention to the roadway in front of him; in either event he was chargeable with negligence."

As to plaintiff's contributory negligence, the court said: "It seems equally clear that the question of plaintiff's contributory negligence was for the jury: 'In the absence of sidewalks the rights of pedestrians upon the

highway are equal to those of motor vehicles; and a pedestrian walking along the right side of a paved roadway is not required to turn and look for approaching traffic: Petrie v. E. A. Myers Co., 269 Pa. 134; King v. Brillhart, 271 Pa. 301; Nalevanko v. Marie, 328 Pa. 586; nor is he required to step off the highway to permit the automobile to pass: Petrie v. E. A. Myers Co., supra. See also Wilson v. Metropolitan Pet. Corp., 324 Pa. 321; and Derrickson v. Tomlinson, 326 Pa. 560': Neidlinger v. Haines, 331 Pa. 529, 200 A. 581. Under the circumstances the rights of the plaintiff and the defendant, on the highway, were equal, and there was no duty on the plaintiff to make use of the earth berm or shoulder of the road as a sidewalk, especially since the rain had affected the surface of the berm, making it a less convenient footway: Petrie v. E. A. Myers Co., supra; Koppenhaver v. Swab, 316 Pa. 207, 174 A. 393. There is considerable merit in the contention that in this day of permissible high speed of motor vehicles, a pedestrian on the highway, for his own safety, should be required to walk along the left side of the pavement facing oncoming traffic, or where there is a suitable berm or shoulder, to use it as a sidewalk. In improving the roads of the Commonwealth and regulating their uses, perhaps too little consideration has been shown those living in the rural districts who must walk upon the highways. Rules of conduct which will prevent injury would seem to be more to their interest than principles of law which allow compensation for injury after the event. The Neidlinger case, however, is the law in its present state, binding upon us, and applying its principles we find nothing in the conduct of the plaintiff which convicts him of contributory negligence as a matter of law."

In Burkleca v. Stephens, 370 Pa. 371 (1952), the plaintiff was walking in the highway with her back to traffic when she was struck and injured by a car

proceeding in the same direction as plaintiff. Mr. Justice Bell stated, at page 373: "Defendant's contention that a pedestrian must carry a flashlight or be guilty of contributory negligence as a matter of law, is without merit. Moreover, even if we assume, contrary to the plaintiff's testimony and to the verdict of the jury, that she was walking along the right hand side of the highway instead of along the berm, this would not amount to negligence per se: Christopher v. General Baking Company, 346 Pa. 285, 30 A. 2d 124; Neidlinger v. Haines, 331 Pa. 529, 200 A. 581; King v. Brillhart, 271 Pa. 301, 114 A. 515; Petrie v. E. A. Myers Co., 269 Pa. 134, 112 A. 240; Gilbert v. Stipa, 157 Pa. Superior Ct. 1, 41 A. 2d 284.

"We may aptly repeat what the Court said in Neidlinger v. Haines, 331 Pa., supra: 'In the absence of sidewalks the rights of pedestrians upon the highway are equal to those of motor vehicles; and a pedestrian walking along the right side of a paved roadway is not required to turn and look for approaching traffic: Petrie v. E. A. Myers Co., 269 Pa. 134; King v. Brillhart, 271 Pa. 301; Nalevanko v. Marie, 328 Pa. 586; nor is he required to step off the highway to permit the automobile to pass: Petrie v. E. A. Myers Co., supra. See also Wilson v. Metropolitan Pet. Corp., 324 Pa. 321; and Derrickson v. Tomlinson, 326 Pa. 560. In our opinion the plaintiffs are clearly not guilty of contributory negligence as a matter of law.'

"In Weibel v. Ferguson, 342 Pa. 113, 19 A. 2d 357, this Court said (page 118) : 'It is of course well settled that a driver must maintain such control over his car as to enable him to stop within the range of his headlights however much his visibility may be impaired by storm, darkness, fog, curve in the road or other conditions: Hutchinson v. Follmer Trucking Co., 333 Pa. 424, 427, 5 A. 2d 182; see also Mason v. Lavine, Inc.,

302 Pa. 472, 477, 153 A. 754.' These authorities are determinative of this appeal."

The only other question presented is whether the evidence sustains a finding that defendant Verna was acting as the agent of defendant Fawley at the time of the accident.

On February 26, 1962, defendant Fawley turned his car over to Verna for a "tune-up". This work was finished at 3 p.m. Defendant, Fawley, asked Verna to take his car to the Mobil Station at the corner of Hermit Street and Ridge Avenue and leave it there for a lubrication after Verna had finished his "tune-up". Verna drove the car to the gas station after he finished the "tune-up" but the gas station was not able to take Fawley's car at that time. At about 5:45 p.m., he again drove the car to the gas station, but the station was again too crowded for him to leave the car. It was on this second trip that the accident happened.

In Rosen v. Diesinger, 306 Pa. 13 (1932), a defendant owner's car was stored in a garage and the owner's wife requested the garageman to drive the car over to her apartment. The garage attendant was involved in an accident enroute to the owner's apartment while complying with the owner's request. Mr. Justice Maxey stated on behalf of the court, at page 17, that " '. . . The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct.' " The court continued:

"We said in the case of Lang et al. v. Hanlon, 305 Pa. 378, that 'The relation of master and servant does not depend upon the mere duration of the employment.' We also said that 'one of the principal tests of the relation of master and servant is the power and duty of the alleged master to control the alleged servant while in his employ. . . . Responsibility goes with authority. Having power to control, the master is bound to

exercise it to the prevention of injuries to third parties or he will be held liable.'

"There was evidence in this case that the defendant had the power to control Combs while he was en route from the garage to her apartment, though she was not actually present in the car at the time. In Jimmo v. Frick, just cited above, the defendant was not in the car when the borrowed driver's negligent act was committed. Actual presence of one person with another is not necessary for the creation or maintenance between them of the relationship of master and servant. There was evidence that Combs, while in the general employment of Hossack, was at the time of the negligent act in the temporary employment of the defendant. If the testimony offered in behalf of plaintiff is credited—as the jury did credit it—Combs was as much the servant of the defendant at the time of the accident as he would have been if he had been engaged regularly by her to drive her car at the end of each day's duties in the garage. It was the defendant, not Hossack, who was being benefitted by the service rendered by Combs at the time of the accident, at least according to evidence whose credibility was for the jury. . . .

"Even though Hossack in loaning Combs to defendant thereby secured 'the valuable asset of good will' of defendant and her husband, as appellant suggests, that fact would not justify a court in declaring as a matter of law that Combs was the servant of Hossack at the time of the negligent act. The question as to whose servant Combs was depended entirely on the fact found by the jury from the evidence adduced and the finding actually made was supported by competent testimony. In the case of Morris v. Payne, Director General of Railroads, 78 Pa. Superior Ct. 171, cited by appellant, it was admitted that the man whose negligent operation of the crane caused the injury complained of was the servant of defendant. The court

424

below held that despite that fact, defendant was not liable because the service being rendered by the railroad company at the time of the accident was a gratituous one to the shipper and the court directed a nonsuit to be entered. The Superior Court reversed the judgment of the court below on the ground that since the crane operator was not in any sense subject to the shipper's direction, the responsibility for his acts could not be shifted from the railroad company to the shipper. In the case before us the evidence shows that the operation of the automobile was subject to the defendant's direction from the time the car left the garage."

In this case the delivery of Fawley's car to a gas station for a lubrication was not a part of Verna's business; it was for Fawley's convenience and sole benefit and done at his specific direction. The tune-up had been completed. Defendant Fawley's version that Verna was road testing the car at the time of the accident was rejected as was the suggestion that there was a deviation in route which negated agency.

For the foregoing reasons we dismissed the exceptions to the court's findings.